IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DUSTIN ANDREW SEXTON                                                               PLAINTIFF

v.                                    Civil No. 2:23-cv-02113-TLB-MEF

SERGEANT JOHN GRIFFITH and
JAIL ADMINISTRATOR JACOB SHOOK
(Both of Johnson County Detention Center)                                          DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is the Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Indisputable Material Facts filed on July 29, 2024. (ECF Nos. 50-52). Plaintiff filed his Response and a Statement of Facts on October 9, 2024. (ECF Nos. 57, 58).

**I.     BACKGROUND**

Plaintiff filed his Complaint on September 12, 2023. (ECF No. 1). He raises what he identifies as two claims based on his incarceration in the Johnson County Detention Center ("JCDC"). Plaintiff names both Defendants in his first claim. (*Id*. at 4). He alleges that on August 25, 2023, his "friends/family" came to pay his bond at JCDC, but Defendant Griffith refused to accept the payment. (*Id*.). Plaintiff alleges that the first time Griffith "lied and told them he couldn't accept the money." (*Id*.). The second time they tried, Griffith allegedly "told them I'm sentenced to the ADC, which I'm not." (*Id*. at 4-5). The third time, Griffith allegedly "told them

1

I'm not housed at the jail." (*Id*. at 5). He then states Defendant Shook "had the final say so in the matter." (*Id*.). Plaintiff alleges that Defendant Griffith is "personally holding a grudge against me and wrongfully holding me against my will (false imprisonment)." (*Id*.). Plaintiff proceeds against both Defendants in their official and individual capacities for this claim. (*Id*.). To support his official capacity claim, he alleges that his rights have been violated when he has a reasonable bond set, and he has a right to that bond despite a personal grudge. (*Id*.). He further argues that even if he has a hold in another county "I can still bond." (*Id*.).

For his second claim, Plaintiff again names Defendants Griffith and Shook. (ECF No. 1 at 6). He repeats the allegations that friends and family came to JCDC on August 25, 2023, to bond him out. (*Id*.). However, Defendant Griffith "made the call" (per Jail Administrator Jacob Shook), not to accept the money on three different occasions. (*Id*.). Plaintiff alleges that regardless of whether "I have holds out of other counties, and or I'm in a detention center, or in the Department of Corrections, if I have a bond set by a Judge it's my right to place it, so I can move forward, and fight my case, which was denied by Jacob Shook and John Griffith." (*Id*.). He describes the situation as "being held hostage." (*Id*.). Plaintiff does not indicate the capacity in which he is proceeding against Defendant for this claim, and he does not allege an official capacity claim in the space provided to do so on the form. (*Id*. at 6-7).

Because Plaintiff's factual allegations all involve the same incident involving the same parties on August 25, 2023, the Court will treat them as one claim.

Plaintiff seeks compensatory, punitive, and other damages. (ECF No. 1 at 9). For non-monetary damages, he asks that Defendant Griffith resign from the Sheriff's office and his driver's license be suspended for 120 months with no work permit. (*Id*.). He would also like him to make

a public apology to Plaintiff acknowledging that he has violated Plaintiff's constitutional rights. (*Id*.).

Defendants filed their Motion for Summary Judgment on July 29, 2024. (ECF Nos. 50-52). They frame the case as one where "Defendants allegedly failed to conceal the truth about charges and holds pending against him to third-parties who presented to pay his bail bond on another charge on August 25, 2023." (ECF No. 51 at 1). They provide critical background and context to Plaintiff's allegations. Specifically, they note that Plaintiff was booked into the Johnson County Jail on November 26, 2022, for possession of meth, heroin, and cocaine with purpose to deliver. (ECF No. 52 at 1). On August 25, 2023, a female acquaintance of Plaintiff arrived at JCDC with $2,500 for Plaintiff's bail. (*Id*.). Defendants explained to the acquaintance that Plaintiff had both a parole hold ("white warrant") from the Arkansas Division of Correction ("ADC") and a "charge/hold" from Pope County against him. (*Id*. at 3). Thus, even if JCDC accepted the money from her, Plaintiff would not be released. (*Id*. at 1-2). At this point, the female acquaintance voluntarily elected to leave without paying the bond. (*Id*. at 2). Defendants note that it is JCDC policy to ensure there are no holds prior to releasing an inmate. (*Id*. at 2). They further note that it is common to have these discussions with someone presenting a bond payment "to ensure they understood the process and to avoid them becoming upset when they paid money only to have the inmate remain in custody (or go to another jurisdiction) instead of being freed that day." (*Id*.). They indicate an inability to confirm the ADC white warrant that Friday, August 25, 2023, but upon inquiry on Monday, August 28, the white warrant was released. (*Id*. at 2-3). The Pope County hold remained in place. (*Id*.). There were no further attempts to pay his Johnson County bond, and Plaintiff remained incarcerated in JCDC until he was transferred to Pope County to face his charges there. (*Id*.). Plaintiff ultimately plead guilty to both the Johnson County and

the Pope County charges on February 5, 2024, and he is currently serving his sentence in the ADC. (*Id*.). His sentencing Order credited him with 426 days of jail time served. (*Id*.).

Defendants argue summary judgment in their favor is appropriate for several reasons. First, they argue Plaintiff does not have standing because he does not have a constitutional right to his friend's money or to have jail staff conceal the truth of his holds. Nor are his friends parties to this action. (ECF No. 51 at 4). Second, they argue Plaintiff's claims are barred by the *Heck* doctrine because he has pleaded guilty to the underlying criminal charges, and his sentence included credit for the time served in JCDC and Pope County. (*Id*. at 5). Third, they argue they are entitled to qualified immunity because they could find no case where constitutional liability has been found under facts like those in this case. (*Id*. at 5-6). Fourth, they argue there is no allegation or proof of any unconstitutional JCDC policy. (*Id*. at 6-7).

On July 30, 2024, the Court entered an Order directing Plaintiff to submit his Summary Judgment Response. (ECF No. 53). The Order advised Plaintiff that he must:

> file a separate Statement of Facts in Dispute which lists: (a) any disagreement you have with the numbered factual statements contained in the Statement of Undisputed Facts filed by the Defendants; and (b) any other disputed facts that must be resolved at a hearing or trial. If you dispute any facts contained in the Defendants numbered Statement of Undisputed Facts, you must identify the number of the paragraph you dispute and you must explain why you dispute the statement.

(*Id*.). Plaintiff filed his Summary Judgment Response and a document labelled Statement of Facts on October 9, 2024. (ECF Nos. 57, 58). The Statement of Facts does not address the numbered factual paragraphs in Defendants' Statement of Undisputed Facts. Thus, it was not filed in compliance with either the Court's Order or the Local Rules of Civil Procedure.

In his Response, Plaintiff argues his due process rights were violated. (ECF No. 57 at 1). He further argues they did not follow their own release process, but he does not elaborate as to

what process was violated. (*Id*.). Plaintiff further argues the ownership of the money was irrelevant, and he argues his friend was "coerced" into leaving without paying his bond with her money. (*Id*. at 2). He points to a note labelled Exhibit A2 which is dated four months prior to the date in question, where a reference to transitional housing was made by Emily Hanuska. He argues this note shows that he was approved to get his bond. (*Id*.). This exhibit was attached to ECF No. 58. Plaintiff circles the following statement: "do not release needs to call probation agent Zimmerman if he pays his bond he has placement for transitional housing." (ECF No. 58 at 7). It is dated April 20, 2023. (*Id*.).

Plaintiff filed a Notice of Address change on November 25, 2024, indicating he was now housed in the ADC North Central Unit. (ECF No. 59).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is

insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

#### A. Failure to Comply with Local Rules

Although Plaintiff submitted a document labelled as Statements of Disputed Facts, it was not in compliance with either the Court's Order or the Local Rules. Local Rule 56.1(a) requires any party moving for summary judgment to submit a separate statement of undisputed material facts. Local Rule 56.1(b) requires the non-moving party opposing the summary judgment motion to file a separate statement of disputed facts. *Pro se* inmates are advised of this requirement in the Order directing them to file a summary judgment response. *Pro se* inmates are also advised of this requirement in the District's Prisoner Litigation Guide, which contains an example to help them understand the concept of using the same paragraph numbering as that used by the moving party in their own statement of disputed facts.

Due to Plaintiff's failure, Defendants' Statement of Facts is deemed admitted pursuant to Local Rule 56.1(c). In determining whether there are genuine disputes of material fact, however, the Court has also considered the allegations set forth in Plaintiff's verified Amended Complaint. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001). "[A] complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint . . . ." *Id*. As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings

to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id.* The Court will, therefore, "piece[] together [Plaintiff's] version of the facts from the verified complaint . . .." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016).

### B.   Wrongful Prolonged Incarceration Claim

The Eighth Circuit has recognized a protected liberty interest in being free from wrongful, prolonged incarceration. *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004). This liberty interest can include a right to freedom from detention once bail has been set and posted. *Hazley v. Dooley*, No. 16CV03935ECTECW, 2018 WL 8224879, at *7 (D. Minn. Nov. 26, 2018), *report and recommendation adopted sub nom. Hazley v. Roy*, 378 F. Supp. 3d 751 (D. Minn. 2019) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010), *cert. denied*, 131 S.Ct. 2150 (2011); *Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017); and *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009)). Plaintiff's Complaint survived the mandatory preservice screening required under the Prison Litigation Reform Act because he alleged that bail had been set, but Defendants had refused to accept his bond payment from friends and/or family. The facts provided by Defendants, however, clarify that his female acquaintance simply elected not to pay the bond once Plaintiff's hold status was explained to her. Further, due to the other holds, Plaintiff did not have a liberty interest to freedom from detention at the time the bond payment was proffered. Specifically, the ADC hold and the Pope County hold both prevented his release, even if bond had been posted in his Johnson County case. Defendants further clarify that the ADC hold was lifted upon inquiry several days later, but no bond was ever again offered for posting in the Johnson County case. Nor does Plaintiff allege that the Pope County hold was lifted, or that bail was set

7

and posted in the Pope County case. Thus, Plaintiff's liberty interest was not violated by Defendants on August 25, 2023.

To the extent Plaintiff argues in his Summary Judgment Response that Defendants violated the policy or procedure of JCDC concerning his bail, he fails to state a plausible constitutional claim. It is well settled that prisoners do not have a constitutional right to enforce compliance with internal prison rules or regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having ... prison officials follow prison regulations"); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy").

Thus, Plaintiff's allegations are contradicted by the summary judgment record such that no jury could reasonably believe them, and summary judgment as a matter of law is appropriate at this time.

### IV.   CONCLUSION

Accordingly, it is RECOMMENDED that Defendants' Motion for Summary Judgment. (ECF No. 50) be **GRANTED**, and Plaintiff's Complaint (ECF No. 1) be **DISMISSED WITH PREJUDICE**.

Referral Status: This case should not remain referred because all matters have been recommended for dismissal in this Report and Recommendation.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of January 2025.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

9